## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Marcus Anthony Forslund and Melissa Carrigan Forslund, | Case No. 21-cv-00731 (SRN/ECW) |
| Plaintiffs, | |
| v. | **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Experian Information Solutions, Inc., | |
| Defendant. | |

Jenna Dakroub and Michael J. Plati, Price Law Group, APC, 8245 N. 85th Way, Scottsdale, AZ 85258, for Plaintiffs

Callie Barr and Eric A. Nicholson, Jones Day, 150 W. Jefferson Ave., Ste. 2100, Detroit, MI 48226; Gregory John Myers, Lockridge Grindal Nauen PLLP, 100 Washington Ave. S., Ste. 2200, Minneapolis, MN 55401, for Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Experian Information Solutions, Inc.'s Motion for Summary Judgment [Doc. No. 35]. For the reasons set forth below, Defendant's Motion is granted.

## I.    BACKGROUND

### A.  Plaintiffs' Bankruptcy and the Chrysler Capital Lease

In May 2019, Plaintiffs Marcus and Melissa Forslund leased a Dodge Ram pickup truck, secured by an agreement with Santander Consumer USA/Chrysler Capital ("Chrysler Capital"). (Nicholson Decl. [Doc. No. 39], Ex. M (Melissa Forslund 1.8.21 Credit Report) at 8; *id.*, Ex. L (Marcus Forslund 1.8.21 Credit Report) at 5.) Following a

series of financial setbacks, Plaintiffs filed for Chapter 7 bankruptcy in the District of Minnesota on June 28, 2020. (Compl. [Doc. No. 1] ¶ 40; Nicholson Decl., Ex. C (Bankruptcy Petition, Case No. 20-41732).) At all times prior to their bankruptcy, Plaintiffs timely made their monthly payments on the Chrysler Capital lease. (Nicholson Decl., Ex. B (Marcus Dep.)[1] at 22:5–20.)

After Plaintiffs' bankruptcy proceedings concluded, the Court issued an Order of Discharge on September 28, 2020. (Nicholson Decl., Ex. D (Discharge Order).) The Order states that debts owed prior to the bankruptcy proceedings are generally discharged, subject to several exemptions. (*Id.*); *see generally* 11 U.S.C. § 727(b) (describing the effect of a discharge). Among the exemptions, "debts covered by a valid reaffirmation agreement are not discharged." (Discharge Order at 2.) A reaffirmation agreement allows a debtor and creditor to maintain the debt, post-bankruptcy; the agreement must be filed with the bankruptcy court to be valid. *See* 11 U.S.C. § 524(c). Plaintiffs filed a statement with their bankruptcy petition representing that they intended to reaffirm their lease with Chrysler Capital. (Bankruptcy Petition at 54–55.) For reasons that are unclear, Plaintiffs did not execute a reaffirmation agreement and did not file one with the bankruptcy court. (Nicholson Decl., Ex. E (Interrogatory 7).) Nonetheless, Plaintiffs continued to make payments on their Chrysler Capital lease and continued to drive the Dodge Ram after their

---

[1] Because Plaintiffs share the same last name and first initial, citations to their depositions are to "Marcus Dep." and "Melissa Dep." Citations to their declarations are to "Marcus Decl." and "Melissa Decl."

bankruptcy discharge. (*Id.*) Chrysler Capital accepted their payments and did not demand surrender of the vehicle. (*Id.*)

### B.  The Bankruptcy and Plaintiffs' Credit Report

Defendant Experian Information Solutions, Inc. ("Experian") received notice of Plaintiffs' bankruptcy from a public records vendor on June 30, 2020, and received notice of Plaintiffs' bankruptcy discharge around October 2, 2020. (Simmons Decl. [Doc. No. 38] ¶ 20.) Neither of these notifications contained information about any of Plaintiffs' specific debts. (*Id.*) In fact, after June 30, 2020, Chrysler Capital stopped reporting information about Plaintiffs' lease to Experian, and did not inform Experian that the lease had been discharged in bankruptcy. (*Id.* ¶ 21.)

Typically, when Experian receives notice of a bankruptcy discharge order, it implements an initial "bankruptcy scrub" procedure for the consumer's credit file. (*Id.* ¶ 15.) The procedure was developed years earlier pursuant to a settlement reached in *White v. Experian Information Solutions, Inc.*, Case No. 8:05-cv-1070 (C.D. Cal. Aug. 19, 2008). (Nicholson Decl., Ex. I (*White* Order).) The *White* Order requires Experian to apply a set of presumptions when it is notified that a consumer has received a Chapter 7 bankruptcy discharge order. (*Id.* ¶ 3.2.) According to these presumptions, Experian's bankruptcy scrub procedure must update certain unsecured debts as discharged in bankruptcy with a zero balance. (*Id.*) In addition, Experian must exclude certain debts from the scrub procedure, such as accounts with a "Current Status" when the consumer files for bankruptcy. (*Id.* ¶ 3.2(b)(ii)(E).)

3

Experian's scrub procedure runs within eight days of Experian receiving notice of a bankruptcy discharge, and it automatically applies to open accounts that are not in a finalized status as of the filing of the consumer's bankruptcy petition. (Simmons Decl. ¶ 16.) Prior to March 2021, the scrub procedure did not update debts that were less than 91 days delinquent.[2] (*Id.*) In addition to the initial scrub procedure, Experian conducts periodic "look-back" scrubs, using the same criteria, for 18 months following a bankruptcy discharge.[3] (*Id.* ¶ 18.) Experian ran its initial bankruptcy scrub for Plaintiffs' credit file around October 5, 2020. (*Id.* ¶ 23.)

### C. Experian's Reporting of the Chrysler Capital Lease

To verify the effect of the bankruptcy discharge, Plaintiffs' bankruptcy attorneys requested Plaintiffs' credit reports from Experian on January 8, 2021, pursuant to Plaintiffs' authorization. (Nicholson Decl., Ex. A (Melissa Dep.) at 43:7–46:4, 51:13–53:6; Marcus Dep. at 45:8–46:12.) The reports listed the Chrysler Capital account among their accounts in "good standing." (Marcus Forslund 1.8.21 Credit Report at 5.) Experian reported the status of the debt as "Open/Never late" with a recent balance of "$10,776 as of Jun[e] 2020." (*Id.*)

---

[2] Experian updated its initial scrub procedure in March 2021, so that now the scrub only excludes accounts that were less than 30 days delinquent at the time of execution. (Simmons Decl. ¶ 16.)

[3] Until January 4, 2021, Experian conducted its look-back scrub on the first Monday of every other month for 18 months following the bankruptcy discharge. (Simmons Decl. ¶ 18.) The look-back scrub now runs on the first Monday of every month. (*Id.*)

Plaintiffs were surprised and confused to see the account described this way because they had not signed a reaffirmation agreement. (Melissa Dep. at 54:12–20.) They believed Experian should have reported any debt not reaffirmed by an agreement as discharged in bankruptcy. (*Id*.) Additionally, Experian had updated Plaintiffs' other pre-bankruptcy accounts, including a different auto lease with Ally Financial signed the same day as their Chrysler Capital lease. (*Id.* at 37:4–38:14; Marcus Dep. 46:18–47:13; Marcus Forslund 1.8.21 Credit Report at 3.) The Ally Financial lease appeared on Plaintiffs' credit reports among their accounts that "may be considered negative" with a status of "Discharged through Bankruptcy Chapter 7" and with no outstanding balance. (Marcus Forslund 1.8.21 Credit Report at 3.) Plaintiffs believed that Experian should have reported their Chrysler Capital account in a consistent manner as their Ally Financial account because they had never missed a payment on either lease. (Marcus Dep. at 47:7–13, 54:8–20.) Mr. Forslund testified that in the alternative, Experian should have reported the Chrysler Capital account with a lower outstanding balance because of their regular payments after June 2020. (*Id.* at 46:21–47:12.)

Plaintiffs testified that Chrysler Capital told them it would no longer submit reports on Plaintiffs' account to the consumer credit bureaus. (Melissa Dep. at 37:23–38:19; Marcus Dep. at 48:12–50:12.) Despite this, Plaintiffs did not contact Experian to dispute the report of the Chrysler Capital account, as they believed their bankruptcy attorneys would do so. (Melissa Dep. at 46:13–48:7.)

In the months after receiving their Experian credit report, Plaintiffs searched for a different vehicle to replace the Dodge Ram leased with Chrysler Capital. (Marcus Dep. at

70:6–11, 71:24–72:18.) Plaintiffs hoped to improve their credit score through regular car payments, since Chrysler Capital was no longer reporting their lease payments to Experian. (*Id.* at 72:9–23.) Plaintiffs' applications for auto financing had mixed results: some potential lenders denied them credit, while others offered to extend credit, though on terms Plaintiffs could not afford. (Melissa Decl. [Doc. No. 47], Ex. 2; Melissa Dep. at 105:10–108:5; Marcus Dep. at 75:24–76:13; Nicholson Decl., Exs. N, Q, R, S.) Plaintiffs continued to drive the Dodge Ram until June 2021, when another dealership purchased their lease in exchange for Plaintiffs' purchase of a different vehicle. (Melissa Dep. at 31:25–32:25.)

### D.  This Lawsuit

Plaintiffs initiated this action on March 18, 2021, alleging that Experian violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*[4] (Compl. ¶ 1.) Specifically, Plaintiffs allege that Experian's reporting of the Chrysler Capital account violated Section 1681e(b), which provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). (Compl. ¶ 79.) The FCRA provides for causes of action for negligent as well as willful noncompliance, *see* 15 U.S.C. 1681(n), (o), and Plaintiffs allege both here. (Compl. ¶ 66.)

---

[4] Plaintiffs initially named Trans Union LLC ("Trans Union") as a defendant as well. Trans Union was dismissed from this case, with prejudice, on May 10, 2021. (Order Dismissing Defendant Trans Union LLC [Doc. No. 13].)

Experian moves for summary judgment on both claims. [Doc. No. 35.] It contends that Plaintiffs cannot demonstrate the existence of any genuine issue of disputed material fact as to the necessary elements of their claims for negligent and willful violation of FCRA Section 1681e(b). Plaintiffs oppose Experian's motion, arguing that there is sufficient evidence to raise a genuine issue of disputed material fact on both claims for trial.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intelligence, Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). And a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the party opposing summary judgment may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Moreover, summary judgment is properly entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## III.   DISCUSSION

The FCRA is not a strict liability statute, so Plaintiffs must do more than show that their credit reports contained an inaccuracy. *Hauser v. Equifax, Inc.*, 602 F.2d 811, 814–15 (8th Cir. 1979). To prevail on their claims that Experian violated Section 1681e(b), Plaintiffs must present evidence that: 1) Experian reported inaccurate credit information about them; 2) Experian failed to follow reasonable procedures intended to assure the accuracy of its reports; 3) Plaintiffs suffered harm; and (4) Experian's failure to follow reasonable procedures was the cause of their harm. *Paul v. Experian Info. Sols., Inc.*, 793 F. Supp. 2d 1098, 1101 (D. Minn. 2011); *Ferrin v. Experian Info. Sols., Inc.*, --- F. Supp. 3d ---, No. 20-cv-841-NEB-TNL, 2022 WL 2954026, at *3 (D. Minn. July 26, 2022).

### A.   Negligent Noncompliance

Experian argues that Plaintiffs have not met their burden of proof for any element of their negligent noncompliance claim sufficient to create a genuine issue of disputed material fact. First, Experian contends that Plaintiffs' claim fails as a matter of law because its report of the Chrysler Capital account is technically accurate. (Def.'s Mem. [Doc. No. 37] at 15–16.) Experian asserts that the reports correctly reflected the status of Plaintiffs' debt with Chrysler Capital as of June 2020, the date of the last listed update, as open, with an outstanding balance of $10,776 and a monthly payment of $468. (*Id.* at 16.) Moreover, Experian asserts that its report was not materially misleading because Plaintiffs filed a

8

statement of intention to assume their lease with the bankruptcy court and continued to make payments to Chrysler Capital after their bankruptcy discharge. (*Id.* at 17–18.) Experian submits that any potential creditor reviewing the report would see a description that reflected the reality of Plaintiffs' ongoing relationship with Chrysler Capital. (*Id.*)

Second, Experian asserts that it followed reasonable procedures in preparing Plaintiffs' reports. Experian notes that it correctly reported the information provided to it by Chrysler Capital, and that under the FCRA, it is entitled to rely on information that complies with industry-standard reporting guidelines. (*Id.* at 27–28.) Moreover, Experian contends that because its bankruptcy scrub procedures were designed in accordance with the *White* Order, and it adhered to those requirements in issuing Plaintiffs' reports, its procedures were reasonable. (*Id.* at 31–32.)

Third, Experian argues that Plaintiffs cannot show that its report of the Chrysler Capital account caused them harm. As to economic damages, Experian contends that Plaintiffs cannot show that their post-bankruptcy credit denials occurred as a result of Experian's reports. (*Id.* at 19–21.) Experian argues that any impact on Plaintiffs' credit, as measured by credit score, debt-to-income ratio, and credit utilization, is purely speculative. (*Id.* at 22–23.) Moreover, Experian notes that Plaintiffs were ultimately able to obtain the auto financing and other credit extensions they sought even with the Chrysler Capital account still listed on their reports. As to emotional distress, Experian argues that Plaintiffs' testimony is too vague to establish a concrete injury. (*Id.* at 23–25.)

In response, Plaintiffs contend that Experian's report of the Chrysler Capital account was inaccurate because, notwithstanding Plaintiffs' ongoing payments to Chrysler Capital,

the bankruptcy court legally discharged their debt in October 2020. (Pls.' Opp'n [Doc. No. 46] at 15–18.) Plaintiffs argue that Experian's procedures were not reasonable because a debtor being "current" on an account is not an exception to a Chapter 7 bankruptcy discharge. (*Id.* at 19.) Experian's scrub procedure therefore should have presumed all "current" accounts were discharged, instead of only updating accounts that were 91 days or more delinquent. (*Id.* at 19–20.) Plaintiffs suggest Experian's procedure is flawed in that it does not flag accounts for which the creditor has not provided an update for several months, a practice known as "stale reporting." (*Id.* at 21–22.) Plaintiffs also dispute that the *White* Order shields Experian from liability. (*Id.* at 21.)

As to damages, Plaintiffs contend the inaccurate reporting itself injured them by artificially raising their amount of reported debt, which negatively impacted their creditworthiness. (*Id.* at 26.) Plaintiffs also assert there are disputed issues of material fact concerning their emotional distress damages. (*Id.* at 28–32.) They point to their testimony concerning the impact of being unable to obtain credit and the distress resulting from the denial of their applications for auto financing. (*Id.* at 30–32.)

The Court need not delve into the accuracy of Experian's report and the reasonableness of its procedures because the element of damages is dispositive. To maintain a claim for negligent noncompliance, a plaintiff must prove "actual damages sustained by the consumer as a result of the failure [to comply]." 15 U.S.C. § 1681o(a)(1); *Peterson v. Experian Info. Sols., Inc.*, 44 F.4th 1124, 1126 (8th Cir. 2022).

### 1.  Economic Damages

Plaintiffs allege that Experian's erroneous reporting of the Chrysler Capital account caused them to suffer "credit harm, loss of credit opportunity, credit denials, and other financial harm." (Compl. ¶ 59.) To the extent Plaintiffs argue that dissemination of a credit report containing inaccurate information, alone, constitutes a harm in violation of the FCRA, *see* Pls.' Opp'n at 12, Plaintiffs' argument fails as a matter of law. As noted above, the FCRA "is not a strict liability statute." *Rydholm v. Equifax Info. Sols. LLC*, 44 F.4th 1105 (8th Cir. 2022) (distinguishing between harm sufficient to confer standing to sue and harm sufficient to raise an entitlement to relief) (citation omitted). Nor is diminution in credit score an injury sufficient to support actual damages. *Peterson*, 44 F.4th at 1127.

Moreover, Plaintiffs have not presented sufficient admissible evidence that Experian's reporting caused any of the economic harms they have suffered since their bankruptcy. Granted, both Plaintiffs testified that they were denied auto financing at two separate dealerships because they "still had a balance at Chrysler Capital." (Melissa Decl. ¶ 8; Marcus Decl. [Doc. No. 49] ¶ 9; Marcus Dep. at 69:7–70:5.) However, their asserted basis for the auto loan denials is dependent upon out-of-court statements by unnamed car salespeople. (*Id.*) Plaintiffs have provided no documents to support their asserted harm. Plaintiffs cannot rely on hearsay in order to avoid summary judgment. *Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1244 (D. Minn. 2013), *aff'd*, 564 F. App'x 878 (8th Cir. 2014) (citing *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 885 (8th Cir. 2009)).

Plaintiffs also point to two letters denying them auto credit, from Global Lending Services and Exeter Finance LLC. (Melissa Decl., Ex. 2.) Both letters list several factors

that contributed to Plaintiffs' credit *score*, but do not specify the reason for the denial of their application for credit financing. (*Id.* at 2, 3.) Neither letter mentions Experian's reporting of the Chrysler Capital account. (*Id.*) Furthermore, four other letters denying credit, offered by Experian, cite either Plaintiffs' bankruptcy or past payment delinquencies as the reason for the denial. (Nicholson Decl., Exs. N, Q, R, S.) Even viewed in the light most favorable to Plaintiffs, these six letters fail to show that the lenders denied Plaintiffs credit "as a result of" Experian's allegedly inaccurate description of their Chrysler Capital account. *Edeh*, 974 F. Supp. 2d at 1272.

On this record, it is pure speculation to conclude that any of Plaintiffs' credit denials following their bankruptcy occurred because of Experian's reporting. Plaintiffs have not presented sufficient evidence to raise a genuine issue of disputed material fact on economic harm.

### 2. Emotional Distress Damages

Even without economic harm, mental and emotional distress can constitute actual damages. However, "emotional distress damages must be supported by competent evidence of genuine injury." *Taylor v. Tenant Tracker, Inc.*, 710 F.3d 823, 828 (8th Cir. 2013). While a plaintiff's own testimony may establish genuine emotional injury, their account must demonstrate "severe emotional distress." *Id.* at 829. Courts have denied emotional distress damages where the plaintiff "suffered no physical injury, [] was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress." *Peterson*, 44 F.4th at 1128 (quoting *Forshee v. Waterloo Indus. Inc.*, 178 F.3d 527, 531 (8th Cir. 1999). Without

12

corroborating indicia of emotional injury, a plaintiff cannot survive summary judgment by relying on their own "self-serving and conclusory statements." *Id.*

Here, Plaintiffs allege Experian's reporting caused them to suffer "interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety." (Compl. ¶ 59.) Plaintiffs never sought medical treatment for their distress, nor have they alleged any physical injury. (Nicholson Decl., Ex. E (Interrogatory 14).) Their testimony is the sole evidence of their emotional distress.

A close examination of Plaintiffs' testimony reveals it lacks the "specific, substantive detail" that is necessary to create a genuine issue of disputed material fact as to emotional distress. *Zean v. Unifund CCR Partners*, No. 08-cv-1091-DWF-AJB, 2009 WL 2461723, at *4 (D. Minn. Aug. 10, 2009). Ms. Forslund testified that when Plaintiffs first viewed the description of the Chrysler Capital account on their Experian reports, they were "curious as to why it was still on there" and felt confused and somewhat anxious. (Melissa Dep. at 53:22–55:2.) Mr. Forslund testified that he felt "frustrated" and "pissed." (Marcus Dep. at 99:6–16.) Ms. Forslund stated that Experian's report caused stress and frustration in their relationship, and they "talk[ed] about [it] a lot more than what we should have." (Melissa Dep. at 90:8–14.)

As to whether her alleged emotional distress interfered with her daily activities, Ms. Forslund admitted she was able to complete them, though Experian's reporting was "constantly on [her] mind." (Melissa Dep. at 89:22–90:3.) Similarly, Mr. Forslund testified that "the biggest thing was the fact that we really wanted to get in[to our credit report] the

vehicles that we were actually paying something for and get[] something out of [it] as far as boosting our credit." (Marcus Dep. at 96:15–20.) This "weigh[ed] on [him] every day." (*Id.*) While Plaintiffs' testimony demonstrates their concerns about the credit report, those concerns did not interfere with their daily activities. Accordingly, the Court finds this testimony, in the absence of any corroborating evidence in the record, does not raise a genuine issue of disputed material fact as to whether Plaintiffs suffered from severe emotional distress.

When asked to describe their feelings of humiliation, both Plaintiffs stated that it arose from the denial of credit at the auto dealerships. (Melissa Dep. at 92:21–93:20; Marcus Dep. at 101:17–20.) Yet Ms. Forslund could not recall specific instances or provide any details regarding her experience(s) of humiliation, and Mr. Forslund stated that he was also concerned about how the auto dealerships would view his bankruptcy in general. (Melissa Dep. at 93:19–20; Marcus Dep. at 101:22–102:3.)

As for physical symptoms, Plaintiffs assert the erroneous reporting caused them to lose sleep. Mr. Forslund testified that he experienced "troubled nights here and there," though he could not place his sleep disturbance within a specific time frame. (Marcus Dep. at 103:11–14.) Similarly, Ms. Forslund stated she "had a hard time falling asleep" after viewing Experian's report. (Melissa Dep. at 98:23–99:3, 101:10–15.) But she also stated that she had trouble sleeping prior to filing for bankruptcy, and that in between the bankruptcy and viewing Experian's report, her sleep was only "a little bit more peaceful." (*Id.* at 101:3–9.)

In addition, Mr. Forslund described feeling "shaky" from anxiety, though he stated that he experienced these symptoms around the time of the bankruptcy as well. (Marcus Dep. at 102:11–103:3.) As with his symptoms of sleeplessness, he could not define the time period in which he felt shaky, nor could he determine whether his shakiness had worsened after Experian's reporting. (*Id.*)

Courts have denied the recovery of emotional distress damages where the bulk of the plaintiff's emotional distress was not "tied in any way to [their] Experian report." *Campbell v. Experian Info. Sols., Inc.*, No. 20-cv-2498-DSD-BRT, 2022 WL 3716982, at *5 (D. Minn. Aug. 29, 2022) (noting that it was "Experian's refusal to settle [plaintiff's] claims[,] as the other agencies did, that led to much of [his] distress"). At times during his testimony, Mr. Forslund suggested that his frustration was attributable to the protracted nature of this litigation rather than the credit report, stating, "[I] planned on being able to be done with this bankruptcy and not have to keep going into stuff, i.e. today, and keep drumming it up. I just want it over with. I want it done," and "[w]e shouldn't be here today." (Marcus Dep. at 97:9–12, 99:14.) Moreover, Plaintiffs never contacted Experian to dispute their report or sought to correct it prior to filing this lawsuit. (Marcus Dep. at 61:8–10, 100:18–21; Melissa Dep. at 46:13–22, 66:22–25.) Their conduct stands in stark contrast to authority on which they rely, in which courts permitted the recovery of emotional distress damages where plaintiffs pursued remedial efforts at great cost to their emotional wellbeing. *See, e.g.*, *Graham v. CSC Credit Servs., Inc.*, 306 F. Supp. 2d 873, 880 (D. Minn. 2004) ("[Plaintiff] was forced to continue prolonged and frustrating negotiations with Gateway, Citibank, and CSC in an attempt to eliminate a derogatory and fraudulent

account from his credit report."); *Losch v. Nationstar Mortg.*, 995 F.3d 937, 943 (11th Cir. 2021) (noting the nearly 400 hours that plaintiff spent to correct the inaccuracy in his credit report).

The record is devoid of any "reasonable detail" about the nature and extent of Plaintiffs' emotional distress and whether it was in fact caused by Experian's reporting of their loan. *Taylor*, 710 F.3d at 829. Plaintiffs' lack of actual damages is dispositive of their negligent noncompliance claim under the FCRA. Accordingly, the Court grants summary judgment to Experian on Plaintiffs' claim of negligent noncompliance with the FCRA.

### B. Willful Noncompliance

Plaintiffs also claim they are entitled to statutory and punitive damages because Experian willfully violated the FCRA. Unlike a claim for a negligent violation of the FCRA, a claim for willful noncompliance does not require proof of actual damages. *See* 15 U.S.C. § 1681n(a)(1–2). However, willful noncompliance under the FCRA requires at least a showing of "reckless disregard." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–59 (2007); *see also Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008) (citing 15 U.S.C. § 1681n) ("FCRA provides for a private right of action if a creditor willingly, knowingly, or recklessly violated its provisions."). "To show willful noncompliance with the FCRA, the plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." *Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998) (citations omitted).

16

Proving willfulness requires Plaintiffs to "clear a high bar." *Beseke v. Equifax Info. Sols., Inc.*, 420 F. Supp. 3d 885, 888 (D. Minn. 2019). This is because "[a] willful violation requires that a party's reading of the FCRA is—at minimum—objectively unreasonable." *Id.* (citing *Safeco*, 551 U.S. at 69). In general, courts find willful violations where defendants have engaged in patently bad behavior, such as misleading consumers, concealing information from consumers, or requesting credit reports as part of carrying out a "vendetta" against the plaintiff. *Bakker*, 152 F.3d at 1014; *Campbell*, 2002 WL 3716982, at *5.

Plaintiffs contend that Experian willfully violated Section 1681e(b) because Experian knew its scrub procedures failed to update accounts that were not reporting as delinquent for at least 91 days. (Pls.' Opp'n at 23–24.) Plaintiffs assert that the scrub, by design, misses debts that have a status of "current" when discharged, and that Experian disregarded the risk to consumers of such erroneous reporting. (*Id.*) Furthermore, Plaintiffs argue that Experian knew stale reporting poses a problem, in general, and that Chrysler Capital had a stale reporting problem, in particular. (*Id.*) Plaintiffs point to the "Metric Report" that Experian regularly sends to Chrysler Capital, which shows that in November 2020, Chrysler Capital had not updated 27,700 accounts for 91-180 days, and had not updated 105,121 accounts for more than six months. (*Id.*; Nicholson Decl., Ex. F (Metric Report, Leases) at 4.) Plaintiffs therefore contend that Experian should have accounted for stale reporting in its procedures or monitored Chrysler Capital's reporting of bankruptcy-related accounts. (Pls.' Opp'n at 23.)

Experian, however, argues that its bankruptcy-related scrub procedures cannot rise to the level of "objectively unreasonable" because the federal court that entered the *White* Order found that Experian's procedures comply with FCRA Section 1681e(b) as a matter of law. (Def.'s Mem. at 33; *White* Order ¶¶ 5.1–5.6.) Experian asserts that Plaintiffs' interpretation of the Metric Report omits important context: Chrysler Capital reports on 3.9 million accounts each month, meaning the accounts not updated in more than six months represent only 2.7% of its total reporting. (Def.'s Reply [Doc. No. 55] at 6; Metric Report, Leases at 2; Nicholson Decl., Ex. G (Metric Report, Loans) at 2.) Experian contends that it is not required by the FCRA to conduct an investigation into individual accounts to determine the reason why a creditor has not submitted an update. (Def.'s Reply at 5.)

The Eighth Circuit has not addressed the preclusive effect of the *White* Order, although some courts in this District have found that the *White* Order is not binding outside of California. *See Morris v. Experian Info. Sols., Inc.*, 478 F. Supp. 3d 765, 770–71 (D. Minn. 2020); *Alsibai v. Experian Info. Sols., Inc.*, 488 F. Supp. 3d 840, 847 (D. Minn. 2020); *Ferrin*, 2022 WL 2954026, at *6–7. However, other courts in this District and elsewhere have rejected claims of willful noncompliance with the FCRA where Experian's procedures complied with the *White* Order. *See, e.g.*, *Campbell*, 2002 WL 3716982, at *6; *Beers v. Experian Info. Sols., Inc.*, No. 20-cv-1797-WMW-JFD, 2022 WL 891620, at *5 (D. Minn. Mar. 25, 2022); *Peterson v. Experian Info. Sols., Inc.*, No. 20-cv-606-DSD-ECW, 2021 WL 3116073, at *4 (D. Minn. July 22, 2021), *aff'd on other grounds*, 44 F.4th at 1128; *Benjamin v. Experian Info. Sols., Inc.*, 561 F. Supp. 3d 1330, 1361 (N.D. Ga. 2021). Assuming without deciding that the *White* Order does not bind this Court, the Court

finds, on the merits, that Experian's bankruptcy scrub procedures are not "objectively unreasonable."

Moreover, while the Eighth Circuit has not addressed the effect of the *White* Order, it recently addressed the reasonableness of Experian's bankruptcy scrub procedures. *Rydholm*, 44 F.4th at 1108–09. Like Plaintiffs here, the plaintiff in *Rydholm* received a credit report from Experian (and Trans Union) listing a Wells Fargo account as current and with an outstanding balance, even though the debt had been discharged in bankruptcy. *Id.* at 1107. The court found the plaintiff's complaint failed to state a plausible claim:

> There are no allegations that the [credit reporting agencies] knew or should have known about systemic problems. For example, Rydholm never directly contested the continued reporting of his credit card balance with either Experian or Trans Union. And he does not assert that Wells Fargo lacked reliability as a source. Nor was the reported account balance facially inaccurate or inconsistent with preexisting records. Though both [credit reporting agencies] had notice of Rydholm's general discharge, that fact alone is insufficient to trigger a duty to investigate. The bankruptcy code provides numerous exceptions to discharge and even authorizes a debtor to reaffirm certain obligations afterwards. Absent notice that the discharge specifically included the account, neither [credit reporting agency] had information contrary to what Wells Fargo reported to them.
>
>             * * *
>
> We join our sister circuits in rejecting the invitation to mandate that [credit reporting agencies] hire individuals with legal training to preemptively determine the validity of reported debts.

*Id.* at 1109 (citations omitted).

In an attempt to distinguish *Rydholm*, Plaintiffs argue that Experian's Metric Report demonstrates that Chrysler Capital's reporting lacked reliability. (Pls.' Opp'n at 23–24.) The Court disagrees. A single month's report showing 2.7% of accounts reporting as stale fails to establish a "systemic reporting problem." *Rydholm*, 44 F.4th at 1109. The Metric

Report reflects that Chrysler Capital had a one-year average "fatal [reporting] error" percentage of only 0.27% for the auto industry. (Metric Report, Leases at 4.) And it is undisputed that Plaintiffs did not contest their Chrysler Capital account with Experian. *Rydholm*, along with the *White* Order, support Experian's position that its bankruptcy scrub procedures do not reflect an "objectively unreasonable" interpretation of Section 1681e(b).

Finally, another case recently decided in this District illustrates the difficulty of proving willful noncompliance. *Ferrin*, 2022 WL 2954026, at *9. In *Ferrin*, Experian's scrub procedure did not update two of the plaintiff's accounts reporting as "current" at the time he filed for bankruptcy. *Ferrin*, at *2. Both creditors sent Experian updates about the respective accounts to reflect, at first, that they were included in the plaintiff's bankruptcy petition, and then later to reflect that they had been discharged. *Id.* at *2–3. Experian rejected the creditor's updates for non-compliance with the industry-standard formatting guidelines. *Id.* When the plaintiff requested his credit report from Experian after his bankruptcy discharge, Experian reported both accounts as having an outstanding balance. *Id.* at *3. The court granted summary judgment for Experian on the plaintiff's FCRA willful violation claim because the plaintiff did not present evidence that Experian was required to accept updates that violate industry standards. *Id.* at *9. The court emphasized that affirmative evidence of "conscious disregard" or "deliberate and purposeful" actions is necessary to prevail on a claim of willful noncompliance. *Id.* (citing *Edeh*, 974 F. Supp. at 1245).

Here, by contrast, Plaintiffs have presented much less compelling evidence. Again, Experian received no updates about Plaintiffs' account with Chrysler Capital after June

2020. Accordingly, Plaintiffs fail to clear the high bar of demonstrating recklessness or a conscious disregard of their rights by Experian sufficient to create a genuine issue of disputed material fact to survive summary judgment.

Accordingly, the Court grants summary judgment to Experian on Plaintiffs' claim of willful noncompliance with the FCRA.

## IV.    CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Doc. No. 35] is **GRANTED** as to all claims.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 6, 2022                              s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge

21